# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BILLIE JO BONOLIS,

*Plaintiff-Appellant,*

v.

METROPOLITAN LIFE INSURANCE
COMPANY,

*Defendant-Appellee.*

No. 03-1659

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, Senior District Judge.
(CA-01-895-MJG)

Argued: May 4, 2004

Decided: June 8, 2004

Before NIEMEYER, SHEDD, and DUNCAN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** William Parry Dale, MCCHESNEY & DALE, P.C.,
Bowie, Maryland, for Appellant. David Alan Carter, MEYERS,
RODBELL & ROSENBAUM, P.A., Annapolis, Maryland, for Appel-
lee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Billie Jo Bonolis, an executive assistant for Northrop Grumman Corporation, commenced this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101 *et seq.*, for short-term and long-term disability benefits, naming as the defendant Metropolitan Life Insurance Company ("MetLife"), the administrator of Northrop Grumman's employee disability benefit plans. Bonolis contends that she suffers from fibromyalgia and, because of her condition, is unable to work at either her regular job or any job fitting her education and experience. The district court concluded that MetLife did not abuse the discretion given to it under the relevant plans in denying Bonolis benefits, and we affirm.

In May 1998, Dr. Lawrence Zyskowski, a rheumatologist, diagnosed Bonolis as suffering from fibromyalgia, a syndrome with symptoms including generalized muscular pain, fatigue, and cognitive dysfunction. While fibromyalgia cannot be diagnosed by a single laboratory test, it can be diagnosed by (1) the presence of certain symptoms and (2) the elimination of alternative causes for the symptoms. Less than three months after reaching this diagnosis, Dr. Zyskowski wrote Northrop Grumman, stating, "At this time I feel that Mrs. Bonolis is disabled and not able to return to her job as a senior administrative assistant. In review of her job description I do not feel that any modification would allow her to return to work[,] especially in view of the significant cognitive nature of her job."

At about the time of Dr. Zyskowski's letter, Bonolis underwent a neurological evaluation by Dr. Harshad Mody, who found that Bonolis "is conscious, alert and oriented times three. There are no aphasic abnormalities. Recent and remote memories are normal. Fund of knowledge is normal." Dr. Mody found no neurological abnormalities and his impression was that Bonolis suffered from chronic fatigue syndrome or fibromyalgia.

Based on these diagnoses, Bonolis submitted a claim to MetLife for short-term disability benefits, asserting that she was unable to work at her regular Northrop Grumman job. A nurse consultant reviewing Bonolis' claim noted that although Dr. Zyskowski emphasized the cognitive nature of Bonolis' job as a reason for her inability to work, there was "no real evidence in notes of mental status exam or demonstration of cognitive problems other than note of poor cognitive function." MetLife informed Bonolis that it was denying her short-term disability claim, pointing out that even in an update letter, Dr. Zyskowski provided no office notes regarding any "cognitive deficits, nor is there any indication of any treatment being provided for cognitive deficits."

Bonolis appealed MetLife's denial of benefits within the administrative structure and provided additional information similar to that which she had presented initially with her claim. MetLife denied her appeal, noting that Bonolis had not had a psychiatric evaluation, which "would include mental and cognitive assessment with quantifying testing to eliminate [Bonolis'] symptoms as psychiatric in origin." The letter also stated that "there is no documentation to support a mental or cognitive impairment other than by self-report." Although MetLife advised Bonolis that there were no further administrative appeals available, it nonetheless permitted Bonolis to submit additional medical information in an attempt to satisfy MetLife's requirements. Bonolis did submit further materials, including documents from Dr. Daniel Clauw, a rheumatologist who also diagnosed fibromyalgia, but none demonstrated cognitive deficits.

MetLife thereupon retained Dr. Jefrey Lieberman to review Bonolis' records and to provide MetLife with an independent judgment. Dr. Lieberman concluded that Bonolis "should be able to perform the duties of a light or sedentary occupation" and, "if there are concerns regarding her cognitive function, then a neuropsychiatric evaluation should be performed to quantify this." Based on Dr. Lieberman's review and the lack of evidence of cognitive deficits in its file, MetLife finally denied Bonolis' claim for short-term disability benefits on October 14, 1999. In its letter, MetLife reiterated that the claim "was denied because the medical evidence did not substantiate the severity of symptoms that would functionally preclude [Bonolis'] [ ]ability to return to work to her job as an Administrative Assistant."

In May 2000, Bonolis requested that MetLife review her claim for long-term disability benefits, based on the same medical data that she had submitted in connection with her claim for short-term benefits, as well as affidavits from Bonolis, Dr. Zyskowski, and Dr. Clauw and some additional documentation from Dr. Clauw discussing Bonolis' symptoms in general terms. To be eligible for long-term benefits, Bonolis was required to demonstrate that she was unable to work at *any job* fitting her training, education, and experience. MetLife denied Bonolis' claim for long-term disability benefits on December 22, 2000, stating that it did not dispute the diagnosis of fibromyalgia but that "the issue remains as to whether the severity of symptoms are such that they would preclude [Bonolis] from performing [her] job per the definition of total disability." The letter concluded that "there is no objective documentation on file to support that the severity of [Bonolis'] symptoms is such that it would preclude [her] from a level of functionality for performing [her] sedentary occupation with Northrop Grumman as a Senior Administrative Assistant."

Bonolis then commenced this action against MetLife under ERISA, alleging wrongful denial of benefits. On the parties' cross-motions for summary judgment, the district court granted MetLife's motion for summary judgment and denied Bonolis' motion.

With respect to the short-term disability claim, the district court concluded that MetLife did not abuse its discretion by choosing to accept the determination of its external reviewer, Dr. Lieberman, and the neurological report of Dr. Mody "on the basis that Drs. Zyskowski's and Clauw's declarations that Plaintiff's fatigue and cognitive dysfunction, which they both listed as a major factor in her ability to work, were unsubstantiated by any testing or other medical evidence." The court noted that Dr. Clauw's and Dr. Zyskowski's opinions "were based only on Plaintiff's subjective complaints and not on the results of any diagnostic testing of her cognitive function." With respect to MetLife's denial of Bonolis' long-term disability claim, the court rejected Bonolis' contention that *de novo* review was required because discretionary authority for determining benefit eligibility was conferred to MetLife through language in an administrative services agreement rather than in the long-term disability plan itself. Relying on "essentially the same analysis" as applied to the short-term disabil-

ity claim, the court concluded that MetLife's denial of long-term disability benefits was not an abuse of discretion. This appeal followed.

We have carefully reviewed the record and considered the arguments of counsel made in their briefs and at oral argument. For the reasons fully set forth by the district court in its thorough "Memorandum and Order," *Bonolis v. Metropolitan Life Insurance Company*, Civil Action No. MJG-01-895 (D. Md. May 13, 2003), we affirm the judgment of the district court.

*AFFIRMED*